IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**STEVEN M. CHAPMAN,**

    Petitioner,

v.                                                Civil Action No. **3:22CV780**

**WARDEN, FCC PETERSBURG MEDIUM,**

    Respondent.

**MEMORANDUM OPINION**

Steven M. Chapman, a former member of the U.S. Air Force who is currently serving two life sentences imposed by a court-martial, brings this petition pursuant to 28 U.S.C. § 2241 challenging his conviction and sentence. Chapman currently is incarcerated at FCC Petersburg-Medium, pursuant to a Memorandum of Agreement between the Department of the Army and the Federal Bureau of Prisons ("BOP"). (*See* ECF No. 27, at 1.) Chapman challenges his conviction and life sentence for premeditated murder—a crime he committed while serving a previously imposed life sentence for burglary, attempted premeditated murder, rape, and forcible sodomy, at the U.S. Disciplinary Barracks at Fort Leavenworth, Kansas ("USDB"). By Memorandum Opinion and Order entered on November 10, 2022, the Alexandria Court dismissed all but two claims. (ECF Nos. 27, 28.)

On December 14, 2022, this case was transferred to the Richmond Division of the United States District Court for the Eastern District of Virginia upon the departure of the Honorable United States District Judge Liam O'Grady. Respondent has filed a Motion for Extension of Time to file the Supplemental Motion to Dismiss. The Motion for Extension of Time, (ECF No. 29),

will be GRANTED to the extent that the Supplemental Motion to Dismiss is DEEMED timely filed. The Court recites the procedural history below.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Factual Basis for the Conviction

In the November 10, 2022, Memorandum Opinion, the Court explained as follows:[1]

> During a recreational softball game at the USDB on July 24, 2010, Chapman struck inmate Michael Fricke twice in the head with an aluminum softball bat after Fricke, who was playing umpire, warned the coach of Chapman's team that the pitcher might be ejected from the game for unsportsmanlike conduct. *See* DEX 13, 6. Fricke later was airlifted to Kansas University Medical Center, where he underwent surgery to relieve swelling and internal bleeding in his cranium; was declared braindead five days later; and ultimately died of the injuries sustained from the blunt force trauma to his head. *Id.* 13, 21.
>
> Chapman was charged with premeditated murder in violation of Article 118 of the Uniform Code of Military Justice (UCMJ). DEX 1. A general court-martial was convened at Fort Leavenworth on July 1, 2011. DEX 4, at p. 4. There, defense counsel argued a motion to dismiss for lack of jurisdiction. *Id.*, at p. 15. Counsel asserted that, because Chapman and the victim had already been formally discharged from the armed forces at the time of the murder, subjecting Chapman to court-martial jurisdiction would violate his right to equal protection of the laws in relation to similarly situated civilians prosecuted in Article III courts. *See* DEX 15. Counsel urged in particular that Chapman would not receive the due process afforded to other civilians, especially with respect to the rights afforded in death penalty cases. *See id.*
>
> During a hearing on July 30, 2012, the military judge (MJ) denied the motion to dismiss, concluding that the "defense has not persuaded this court that the accused has suffered a loss of equal protection by being subject to that jurisdiction sufficient to cause this lowly court to declare an act of Congress unconstitutional and overrule over 100 years of case law in this area." *Id.*, at pp. 26-27. The MJ first observed that Article 2(a)(7) of the UCMJ provides that "persons in the custody of the armed forces serving a sentence imposed by a court-martial" are subject to court-martial jurisdiction. *Id.*, at p. 25. "There's nothing in the statute," the MJ continued, "that would cause anyone to even remotely believe that there was some unspoken exception for those who received their punitive discharge before they are released from confinement." *Id.* The MJ further opined that "a long line of cases have held that military jurisdiction over former military persons serving a sentence imposed by a court-martial is constitutional because

---

[1] The Court employs the pagination assigned to all documents by the CM/ECF docketing system.

2

such jurisdiction does not bring civilians under military control, but merely continues existing military jurisdiction." *Id.* Concerning the equal-protection argument, the MJ explained that, subsequent to the cases relied on by defense counsel, there have been "changes in the military justice system" that "have proven that we can protect the constitutional rights of Soldiers, including their death penalty due process rights . . . and still do the nation's business of defending this country and its citizens." *Id.*, at p. 26.

After the MJ denied the motion to dismiss, the parties prepared for Chapman to enter a guilty plea. *See id.*, at p. 27. The MJ admonished Chapman that the plea "will not be accepted unless you realize that by your plea, you admit every act or omission and every element of the offense to which you're pleading guilty, and that you're pleading guilty because you actually are, in fact, guilty." *Id.*, at p. 28. Chapman confirmed that he understood. *Id.* Next, Chapman confirmed that he had "voluntarily enter[ed] into the [fact] stipulation because [he] believe[d] it [was] in [his] best interest to do that." *Id.*, at p. 31. The MJ told Chapman that the fact stipulation would be used for the purposes of deciding whether he was actually guilty and to determine an appropriate sentence. *Id.* The MJ then gave Chapman an opportunity to "clear up any contradictions" in the fact stipulation and to declare "right now if there's anything whatsoever you disagree with or feel is untrue." *Id.* Chapman confirmed that "everything in the stipulation of fact [is] true." *Id.*, at p. 32.

Next, the MJ explained each element of the offense to which Chapman was pleading guilty.

> Element number one, that Inmate Michael W. Fricke is dead;
> Element number two, that his death resulted from your act in striking Inmate Michael W. Fricke in the head with a baseball bat at Fort Leavenworth, Kansas, on or about 24 July 2010;
> Element number three, that the killing of Inmate Michael W. Fricke by you was unlawful; and
> Element number four, that at the time of the killing, you had the premeditated design to kill Inmate Michael W. Fricke.

*Id.*, at pp. 33-34. The MJ next explained premeditated design to kill.

> "Premeditated design to kill" means the formation of a specific intent to kill and consideration of the act intended to bring about death. The premeditated design to kill does not have to exist for any measurable or particular length of time. The only requirement is that it must precede the killing.

*Id.*, at p. 34.

Then, Chapman explained in his own words why he is guilty of premeditated murder.

> I'm guilty of premeditated murder of Mr. Michael Fricke because on 24 July 2010, I was the third base coach for my softball team and Mr. Fricke was the home plate umpire. Before the game started, Mr. Fricke came and gave us a briefing, basically, how the game would go. He stated in the interest of time he was going to

3

> > call a "hitter's game," meaning that any ball that came across the plate was going to be a strike.
> >
> > . . . [T]his pretty much didn't happen for our team. It happened for the other team, but it was pretty evident by the third inning; and just as everyone else on the team was, I was getting heated as well.
> >
> > . . .
> >
> > Mr. Fricke started back to home plate and I started back for the coach's box on the third base line. When I got back to the third base area, I saw that Mr. Fricke was at the fence halfway between home plate and the on-deck circle calling for the head coach.
> >
> > . . . [A]s the third base assistant coach, I started over to see what the issue was. As I got close enough to hear what was being said, I heard Mr. Fricke say something to the effect of, "If your pitcher berates me or accuses me of being unfair one more time, I will eject him." When I heard this . . . I got pissed and thought, "I'm going to jack this guy up."
> >
> > I also thought, "this is a big guy," so . . . I walked to the guy on the on-deck circle to get the bat. As I got the bat in my hand, I thought, "so I'm going to kill this guy." I turned around, walked a couple steps, and hit him in the back of the head with the bat. When he fell forward, he landed with his head – with his face turned to the left. I then hit him again with the bat on the left side of his head. Once I saw blood running out of his left ear, I figured he was dead, so I threw the bat down.
>
> *Id.*, at pp. 36-37.
>
> Chapman further declared that "[a]t no time on" the date of the murder "did I consume any intoxicating substance," and that he "was not suffering any mental disease or defect and was able to fully appreciate the nature, quality, and wrongfulness of my acts." *Id.*, at p. 37. Chapman added that he "knew what [he] was doing was a horrible thing, and [he] did it anyway." *Id.* Finally, Chapman admitted that he "had the specific intent to kill Mr. Fricke before [he] swung that bat at his head." *Id.*, at p. 38. Chapman told the MJ that although he was reading from a written document, he wrote the whole colloquy himself without the assistance of his lawyer and that he understood all of the concepts he discussed. *Id.*, at p. 40. Later, the MJ asked Chapman if he was "satisfied that [his] defense counsels' advice is in [his] best interest"; Chapman said yes. *Id.*, at p. 60.
>
> Finally, Chapman pleaded guilty to committing premeditated murder, and the MJ found him guilty of the offense. *Id.*, at p. 61. The next day, on July 31, 2012, the MJ imposed a sentence of life imprisonment without eligibility for parole. DEX 5.

(ECF No. 27, at 1–5 (alterations in original).)

B. **Review in the Military Courts**

As further explained in the November 10, 2022, Memorandum Opinion,

> Chapman's case was subject to mandatory review by the Army Court of Criminal Appeals (ACCA). *See* 10 U.S.C. § 866(b); *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016).[2] He was represented by two new military defense attorneys, who submitted the case to the ACCA "upon its merits" without "admit[ting] that the findings and sentence are correct in law and fact." DEX 6. Appended to the request for review is Chapman's list of issues that he, not his attorneys, sought to raise, as permitted by *United States v. Grostefon*, 12 M.J. 431, 436-37 (C.M.A. 1982). Chapman raised the following seven claims:
> (1) Chapman received ineffective assistance of counsel because his appointed attorneys were not capitally qualified under the standards of the American Bar Association (ABA);
> (2) Chapman received ineffective assistance of counsel because his appointed attorneys did not allow him to assist in his own defense;
> (3) Chapman was denied his right to participate and assist in the preparation of his appeal;
> (4) The MJ erred by denying the motion to dismiss for lack of jurisdiction;
> (5) Chapman's trial was tainted by unlawful command influence;
> (6) The threat of capital referral forced Chapman to accept a fact stipulation that contained irrelevant and highly prejudicial information about the victim as well as false information; and
> (7) The sentence of life without parole is inappropriate for Chapman's offense.
>
> DEX6.
> Before the ACCA appeal was filed, the army approved on January 7, 2013, Chapman's request to be transferred to the custody of the BOP pursuant to a Memorandum of Agreement between the Department of the Army and the BOP. DEX 8.
> The ACCA affirmed . . . Chapman's conviction and sentence in an order dated January 17, 2014. DEX 10. The ACCA declared, "[o]n consideration of the entire record, including consideration of the issues personally specified by the appellant, we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact." *Id.*
> On April 18, 2014, Chapman's appellate counsel filed a petition for review to the Court of Appeals for the Armed Forces (CAAF). DEX 7. Like the ACCA brief, counsel "submit[ted] the case upon its merits" without "admit[ting] that the

---

[2] The ACCA has plenary de novo review and is obligated to ensure that "the evidence provides proof of the appellant's guilt of each offense beyond a reasonable doubt." *United States v. Roach*, 66 M.J. 410, 412 (C.A.A.F. 2008).

5

> findings and the sentence are correct in law and fact." *Id.* Appended to counsel's submission was another *Grostefon* brief that Chapman authored, raising the same seven claims he raised to the ACCA. *Compare* DEX 6, *with* DEX 7. The CAAF denied the petition for review on August 1, 2014. DEX 11.

(ECF No. 27, at 5–7 (alterations in original).)

### C. Federal Habeas

On April 30, 2021, Chapman filed a § 2241 petition in this Court, and then subsequently filed a corrected, amended petition on July 30, 2021. The Alexandria Court construed his grounds for relief as follows:

> (1) Article 2(a)(7) of the UCMJ is unconstitutional because Chapman is a civilian;
>
> (2) Neither the ACCA nor the CAAF had jurisdiction to review Chapman's court-martial conviction because Chapman had been discharged from the armed forces and transferred to the BOP for incarceration;
>
> (3) The court-martial was plagued by unlawful command influence;
>
> (4) Defense counsel was constitutionally ineffective because they were not capital qualified under the ABA;
>
> (5) The threat of capital referral forced Chapman to accept a fact stipulation that contained irrelevant and highly prejudicial information about the victim;
>
> (6) The sentence of life without parole is inappropriate for the offense;
>
> (7) Defense counsel was constitutionally ineffective for refusing to allow Chapman to assist in his own defense and by giving him false information to induce him into accepting a plea agreement; and
>
> (8) Chapman is actually innocent of the premediated murder.

(ECF No. 27, at 7.) Respondent moved to dismiss the § 2241 Petition under Federal Rule Civil Procedure 12(b)(6), but according to the Alexandria Court, "the supporting memorandum addressed only six of the eight claims raised in the petition." (*Id.* at 1.) The Court determined that Claims (1)–(4), (7), and (8) "are either unreviewable or meritless" and granted the Motion to

6

Dismiss. (*Id.* at 1, 16.) The Court "directed [Respondent] to respond to petitioner's remaining claims—the claims identified above as Claim (5) and Claim (6)." (*Id.* at 16.)

The matter is now before the Court on the Supplemental Motion to Dismiss. (ECF No. 30.) Despite the provision of notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Chapman has not filed a response. The Supplemental Motion to Dismiss will be GRANTED because Chapman did not raise these claims in his § 2241 Petition, and in the alternative, the remaining claims are not reviewable by this Court.

## II. ANALYSIS

### A. Did Chapman Raise Claims Five and Six?

In the November 10, 2022, Memorandum Opinion, the Alexandria Court determined that Respondent failed to address Claims (5) and (6). (ECF No. 27, at 2.) Respondent now

> wishes to note simply for the record his respectful disagreement with the Court's construction of Chapman's petition on this score. In the form habeas petition that Chapman utilized (Dkt. No. 10), the two issues identified above were listed as those Chapman has raised in an "*earlier challenge[]*" of the court martial decision. *Petition* (Dkt. No. 10), ¶7(a)(6) (emphasis added) & p.10 (listing the two above issues "in order to completely answer question 7(a)(6). Indeed, these two issues were precisely articulated by Chapman in his *Grosfeton* statement on direct appeal to ACCA, REX at 7–8, and were not articulated in the memorandum that Chapman filed in this Court in support of his habeas petition (Dkt. No. 11).

(ECF No. 32, at 11 n.8 (alteration in original).) After a review of Chapman's § 2241 Petition and the "added page," Chapman very clearly did not raise the claims the Alexandria Court identified as Claims (5) and (6) in his § 2241 Petition. (*See* ECF No. 10, at 10.) Chapman clearly noted that the claims that he labels as 6 and 7, were a continuation in "order to completely answer 7(a)(6) issues raised." (*Id.*) Number 7(a)(6) on the standard habeas form clearly asked Chapman to identify the "[i]ssues raised" in his "First Appeal" to the "Army Court of Criminal Appeals." (*Id.* at 2.) Therefore, Respondent's argument is well-taken, and is bolstered by the fact that Chapman

7

has not expressed any further interest in litigating this action. The Court finds that Chapman did not raise Claims (5) and (6) as a basis for federal habeas relief. For this reason alone, any remaining aspect of the § 2241 Petition is DENIED.

B. **Claims (5) and (6) are Not Reviewable by This Court**

Civil courts cannot review claims that have been "fully and fairly" considered by the military justice system. *Burns v. Wilson*, 346 U.S. 137, 142 (1953). The United States Court of Appeals for the Fourth Circuit has yet to identify the exact standard governing collateral attacks of court-martial convictions. District courts within the Fourth Circuit, however, have relied upon the United States Court of Appeals for the Tenth Circuit's jurisprudence.[3] *See, e.g., Chinchilla v. Whitley*, No. 3:20cv871–HEH, 2021 WL 1792075, at *3–5 (E.D. Va. May 5, 2021) ("The Fourth Circuit has not implemented a definitive framework, but district courts within the circuit have near universally adopted the Tenth Circuit's [full and fair consideration] approach." (citing *Anderson v. Bolster*, No. 1:19CV75, 2020 WL 5097516, at *4 (E.D. Va. Aug. 27, 2020))), *aff'd* 2022 WL 3136940, at *1 (4th Cir. Aug. 5, 2022); *Grafmuller v. Wegner*, No. 2:13CV50, 2013 WL 4808881, at *7 (E.D. Va. Aug. 9, 2013) ("District courts within the Fourth Circuit . . . have adopted the Tenth Circuit's approach to analyzing 'full and fair consideration.'" (internal citations omitted)).

The Tenth Circuit has identified four factors used to determine the validity of a collateral challenge to a court-martial:

> (1) the asserted error is of substantial constitutional dimension; (2) the issue is one of law rather than of disputed fact already determined by the military tribunal; (3) there are no military considerations that warrant different treatment of constitutional claims; and (4) the military courts failed to give adequate consideration to the issues involved or failed to apply proper legal standards.

---

[3] Because the USDB is located in Fort Leavenworth, Kansas, within the Tenth Circuit's jurisdiction, the Tenth Circuit has had extensive opportunity to analyze and review these issues. *See Chinchilla*, 2021 WL 1792075, at *3 (citing *Anderson*, 2020 WL 5097516, at *4 n.4; *Grafmuller*, 2013 WL 4808881, at *6)).

*Lips v. Commandant, U.S. Disciplinary Barracks*, 997 F.2d 808, 811 (10th Cir. 1993). In this analysis, the fourth factor, full and fair consideration, is "the most important." *Thomas v. U.S. Disciplinary Barracks*, 625 F.3d 667, 670–71 (10th Cir. 2010). Civil courts afford military court decisions "significant deference," and a petitioner has an "onerous" burden in proving that a claim did not receive full and fair consideration in the military courts. *Anderson*, 2020 WL 5097516, at *5. "An issue has been given full and fair consideration when it has been briefed and argued at the military court, even if that court summarily disposed of the issue." *Faison v. Belcher*, 496 F. App'x 890, 891 (10th Cir. 2012). In some circumstances, "even less may be required." *Grafmuller*, 2013 WL 4808881, at *7 (finding that military courts fully and fairly considered claims despite summary denials); *see also Thomas*, 625 F.3d at 671 (finding that the ACCA fully and fairly considered claims although it did not hear oral argument and did not explain its reasoning in dismissing the claims).

Here, the military courts have undoubtedly afforded Claims (5) and (6) full and fair consideration. Chapman raised Claims (5) and (6) here before the ACCA and the CAAF. (ECF No. 15–6, at 10–11; ECF No. 15–7, at 15–16). The ACCA indicated that these claims "personally specified by the appellant" had been considered and rejected. (ECF No. 15–10, at 1.) The CAAF subsequently summarily denied Chapman's petition for review that included these claims. (ECF No. 15–11, at 2.) In reviewing and denying Chapman's claims, the ACCA and CAAF fully and fairly considered the arguments presented in Claims (5) and (6) here. *See Thomas*, 625 F.3d at 671. The military courts' full and fair review precludes this Court from reviewing Claims (5) and (6) here. Accordingly, to the extent they are raised in his federal habeas petition, the remaining claims will be DISMISSED.

## III. CONCLUSION

Respondent's Motion for Extension of Time, (ECF No. 29), will be GRANTED to the extent that the Supplemental Motion to Dismiss is DEEMED timely filed. Respondent's Supplemental Motion to Dismiss, (ECF No. 31), is GRANTED. The remaining claims will be DISMISSED. The § 2241 Petition will be DENIED. The action is DISMISSED.

An appropriate Order shall issue.

Date: 21 July 2023
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge